IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SEAN PRESSLEY,                        )
                    Plaintiff,        )
                                      )
          v.                          )    Civil Action No. 01-2468
                                      )    Consent Case
SUPT. C. BLAINE; SUPT. J. MILLER;     )    Magistrate Judge Lenihan
JOHN DOE no. 1; JOHN DOE no.2;        )
JOHN DOE no. 3; JOHN DOE no. 4;       )
JOHN DOE no. 5; JOHN DOE no. 6;       )
H/E B. ANSELL; C/O WISYAUSKI;         )
C/O MCCLURE; H/E KERRI CROSS;         )
C/O GIFFORD; C/O SMITH; H/E R.        )
BITNER; UNKNOWN PRC MEMBERS;          )
G/S S. DELETTO; K. PATTERSON,         )
FISCAL T/C; C/O HAWKENBERRY;          )
TORRETS, COUNSELOR, sued in their     )
individual and official              )
capacities,                          )
                    Defendants.       )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Sean Pressley, an inmate incarcerated at the State Correctional Institution at Greene, located in Waynesburg, Pennsylvania (SCI-Greene), commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983.  Named as Defendants are various present and/or former employees of the Pennsylvania Department of Corrections (DOC).  In his Amended Complaint, Plaintiff claims that Defendants violated his rights as protected by the First, Fifth, Eighth and Fourteenth Amendments of the United States Constitution.  Specifically, he seeks to impose liability against Defendants on the basis of alleged false misconducts he has received and for which he has received 1080 days of disciplinary confinement.

### A.    Standard of Review - Judgment on the Pleadings

Defendants have filed a Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  A motion for judgment on the pleadings is treated under the same standard as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Regalbuto v. City of Philadelphia, 937 F.Supp. 374, 376-77 (E.D.Pa. 1995), *aff'd*, 91 F.3d 125 (3d Cir. 1996), *cert. denied*, 519 U.S. 982 (1996); Constitution Bank v. DiMarco, 815 F.Supp. 154, 157 (E.D.Pa. 1993).  Consequently, judgment under Rule 12(c) will only be granted where the moving party clearly has established that no relief could be granted under any set of facts that could be proved.  Taj Mahal Travel v. Delta Airlines, Inc., 164 F.3d 186, 189 (3d Cir. 1998). Additionally, the district court must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party.  Regalbuto, 937 F.Supp. at 377 (citing Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 406 (3d Cir.1993)).  In addition, however, in considering a motion for judgment on the pleadings, a court is not limited to the pleadings themselves but may also consider facts of which the court may take judicial notice.  Oran v. Stafford, 226 F.3d 275,  289 (3d Cir. 2000) (court may take judicial notice of public disclosure documents filed with the SEC in disposing of a motion for judgment on the pleadings).

## B. Plaintiff's Allegations

In his Amended Complaint (Am. Compl., doc. no. 25), Plaintiff sets forth the following allegations.  On March 29, 2001, Sergeant Clark prepared misconduct report no. A322862 accusing Plaintiff of refusing to obey an order.  The misconduct was approved by the shift commander and was supposed to be served upon Plaintiff by John Doe no. 1 with inmate witness and inmate version forms. Defendant John Doe no. 1 did not serve Plaintiff with any of these items (Am. Compl., ¶¶ 1-3).

On March 29, 2001, C.O. Brown prepared misconduct report no. A322863 accusing Plaintiff of assault.  The misconduct was approved by the shift commander and was supposed to be served upon Plaintiff by John Doe no. 2 with inmate witness and inmate version forms.  Defendant John Doe no. 2 did not serve Plaintiff with any of these items (Am. Compl., ¶¶ 4-6).

On March 29, 2001, C.O. Kulick prepared misconduct no. A322864 accusing Plaintiff of refusing an order and destroying state property.  The misconduct was approved by the shift commander and was supposed to be served upon Plaintiff by John Doe no. 3 with inmate witness and inmate version forms.  Defendant John Doe no. 3 did not serve Plaintiff with any of these items (Am. Compl., ¶¶ 7-9).

On March 29, 2001, C.O. Saunders prepared misconduct no. A322865 accusing Plaintiff of assault and refusing to obey an

order.  The misconduct was approved by the shift commander and was
supposed to be served upon Plaintiff by John Doe no. 4 with inmate
witness and inmate version forms.  Defendant John Doe no. 4 did
not serve Plaintiff with any of these items (Am. Compl., ¶¶ 10-
12).

On March 29, 2001, C.O. Rordan prepared misconduct no.
A248671 accusing Plaintiff of refusing to obey an order.  The
misconduct was approved by the shift commander and was supposed to
be served upon Plaintiff by John Doe no. 5 with inmate witness and
inmate version forms.  Defendant John Doe no. 5 did not serve
Plaintiff with any of these items (Am. Compl., ¶¶ 13-14).

On March 29, 2001, C.O. Stewart prepared misconduct no.
A322866 accusing Plaintiff of destroying property.  The misconduct
was approved by the shift commander and was supposed to be served
upon Plaintiff by Defendant John Does with inmate witness and
inmate version forms.  Defendant John Does did not serve Plaintiff
with any of these items (Am. Compl., ¶¶ 15-17).

On April 4, 2001 a hearing was held before hearing examiner
Ansell on the misconducts outlined above.  Plaintiff informed
Ansell that he had not received notice of the charges in order to
prepare a defense, request witnesses or submit a written version.
Defendant Ansell asked Plaintiff if he was in a strip cell and
Plaintiff answered "yes."  Defendant Ansell told Plaintiff that he
would receive copies of the misconduct reports and instructed

- 4 -

Defendants Wisyauski and McClure to take him back to his cell. Later that day, Plaintiff received six rationales stating that at the hearing, he had told Ansell that that he did not want to be present and that this statement was witnessed by Defendants Wisyauski and McClure.  The hearing was held with Plaintiff *in absentia* where he was found guilty of all the misconducts and sentenced to three hundred (300) days of disciplinary time plus restitution (Am. Compl., ¶¶ 18-25).

On November 16, 2001, Defendant Hawkenberry came to Plaintiff's cell and asked him if he wanted to attend his restitution assessment hearing for misconduct report A322866 to which Plaintiff affirmatively replied.  Defendant Hawkenberry then produced a document that he requested Plaintiff to sign. Plaintiff refused to sign the document but reiterated that he still wanted to attend the hearing.  Plaintiff then was told that if he did not sign the document, he would not be allowed to attend the hearing.  Defendants Hawkenberry and Patterson stated that Plaintiff did not want to attend the assessment hearing so it also was held in his absence and a lien was placed on his inmate account (Am. Compl., ¶¶ 26-30).

On July 5, 2001, C.O. Gibson prepared misconduct report A362259 accusing Plaintiff of threatening an employee, using abusive language, and refusing to obey an order, which was approved by the shift commander and served on Plaintiff.  On July

5, 2001, C.O. Polfus prepared misconduct report A254967 accusing Plaintiff of threatening an employee, using abusive language, and refusing to obey an order, which was approved by the shift commander and served on Plaintiff.  On July 5, 2001, Lt. Fisher prepared misconduct report A324881 accusing Plaintiff of rioting, which was approved by the shift commander and served on Plaintiff. On July 5, 2001, Lt. Fisher prepared misconduct report A093447 accusing Plaintiff of destroying state property, which was approved by the shift commander and served on Plaintiff.  On July 5, 2001, Lt. Fisher prepared misconduct report A271183 accusing Plaintiff of possession of contraband, which was approved by the shift commander and served on Plaintiff (Am. Compl., ¶¶ 33-37).

On July 9, 2001, a hearing was held on these misconducts before hearing examiner Ansell.  Ansell refused to allow Plaintiff any inmate assistance, refused to allow him to call his inmate witnesses, and refused to allow him to view the videotape evidence.  Because of this, Plaintiff was unable to prepare a defense so he left the hearing room.  The remainder of the hearing was held with Plaintiff *in absentia* where he was found guilty of the misconducts and sentenced to a total of six hundred and sixty (660) days of disciplinary custody plus restitution (Am. Compl., ¶¶ 38-40).

On November 5, 2001, Defendant Hawkenberry came to Plaintiff's cell and asked him if he wanted to attend his

restitution assessment hearing for misconduct report A093447 to
which Plaintiff affirmatively replied.  Defendant Hawkenberry then
produced a document that he requested Plaintiff to sign.
Plaintiff refused to sign the document but reiterated that he
still wanted to attend the hearing.  Plaintiff then was told that
if he did not sign the document, he would not be allowed to attend
the hearing.  Defendants Hawkenberry and Patterson stated that
Plaintiff did not want to attend the assessment hearing so it also
was held in his absence and a lien was placed on his inmate
account (Am. Compl., ¶¶ 41-45).

On August 20, 2001, Sgt. Santoyo prepared misconduct report
A211812 accusing Plaintiff of destroying state property.
Defendant Gifford did not serve Plaintiff with an inmate witness
and inmate version form in accordance with DOC policy (Am. Compl.,
¶¶ 48-49).  On August 20, 2001, Defendant Endres prepared
misconduct report A211820 accusing Plaintiff of refusing to obey
an order.  Defendant Smith did not serve Plaintiff with an inmate
witness and inmate version form in accordance with DOC policy (Am.
Compl., ¶¶ 50-51).

On August 23, 2001, a hearing was held on these misconducts
before hearing examiner Cross.  Cross read the charges and asked
for a plea.  Plaintiff informed Cross that he had not received
notice of the charges because he was in a strip cell.  Lt. Norman
left the hearing room and came back with copies of two misconduct

- 7 -

reports falsely claiming that they were taped to Plaintiff's cell in full view.  Lt. Norman refused to answer Plaintiff's questions and he was found guilty of the misconducts and sanctioned with one hundred and twenty (120) days of disciplinary custody plus restitution (Am. Compl., ¶¶ 55-57).

On November 16, 2001, Defendant Hawkenberry came to Plaintiff's cell and asked him if he wanted to attend his restitution assessment to which Plaintiff affirmatively replied. Defendant Hawkenberry then produced a document that he requested Plaintiff to sign.  Plaintiff refused to sign the document but reiterated that he still wanted to attend the hearing.  Plaintiff then was told that if he did not sign the document, he would not be allowed to attend the hearing.  Defendants Hawkenberry and Patterson stated that Plaintiff did not want to attend the assessment hearing so it also was held in his absence and a lien was placed on his inmate account (Am. Compl., ¶¶ 55-57).

On December 1, 2001, Plaintiff wrote an inmate request to Defendant Blaine protesting about not being allowed to attend his assessment hearing.  Blaine did not respond to this request (Am. Compl., ¶ 63).

Plaintiff alleges that Defendants Blaine, D'Eletto, unknown PRC members and Turrats denied Plaintiff the use of the appeal process to seek redress from the constitutionally inadequate misconduct hearings (Am. Compl., ¶ 68).  He further claims that

his rights were violated as a result of policies and practices
made by Defendants Blaine and Miller that denied him receipt of
misconduct reports, inmate witness forms, inmate version forms and
a pen to fill these forms out (Am. Compl., ¶ 69).  Plaintiff
addressed these issues on appeal and Defendants Blaine, PRC and
Bitner failed to do anything (Am. Compl., ¶ 70).

       As a result of his misconducts complained about in his
Amended Complaint, Plaintiff received 1080 days of disciplinary
custody (DC) in the Restricted Housing Unit (RHU).  He avers that
the conditions of the RHU are substantially different than those
in Administrative Custody (AC) in the RHU.  Specifically, he
provides that there is "an atmosphere of excessive violence
whereby officers use mental and physical abuse as a means to
horrify prisoners, as well as Plaintiff." (Am. Compl., ¶ 76.)  In
addition, prisoners in disciplinary confinement are not provided
with the same caloric diet as other prisoners and Plaintiff has
lost fifty (50) pounds since being house in the RHU (Am. Compl., ¶
77).  Prisoners within DC are exposed to contaminated and
improperly cleaned eating utensils and are required to exercise in
unwashed garments, which exposes inmates to disease and funguses
((Am. Compl., ¶¶ 78-79).  Prisoners in DC have severely limited
access to medical treatment because the nurses refuse to come to
the unit and, instead, require inmates to sign up for sick call,
which significantly delays/denies medical treatment (Am. Compl.,

¶¶ 80, 82).  When medical staff does come to the RHU unit, they stay outside the cell door, which compromises the inmate's confidentiality in his medical care (Am. Compl., ¶ 81).  RHU disciplinary prisoners have limited access to legal materials, legal assistance and are not permitted to make legal phone calls (Am. Compl., ¶¶ 83-87).  DC prisoners may not possess personal property such as a radio, television set, watch, footwear, clothing, or confections from the commissary (Am. Compl., ¶¶ 89-91).  DC prisoners can not receive idle pay, be employed or participate in rehabilitative programs (Am. Compl., ¶ 92).  DC prisoners are allowed only one visit per month as opposed to four visits allowed for other prisoners (Am. Compl., ¶¶ 93-94). DC prisoners may not participate in any group religious activities (Am. Compl., ¶ 95).

### C. Liability under 42 U.S.C. § 1983

Plaintiff asserts liability against Defendants pursuant to 42 U.S.C. § 1983.  In order to assert liability under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  He must allege:  1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

To establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. Rode, 845 F.2d at 1207. "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id. See also* Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

Moreover, a supervising public official has no affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates. Notwithstanding, when a supervising official knowingly permits a continuing custom or policy that results in harm to the plaintiff, 1983 liability may attach. Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989) (Colburn I). In order to maintain a claim for supervisory liability, a plaintiff must show: 1) that the supervising official personally participated in the activity; 2) that the supervising

official directed others to violate a person's rights; or 3) that
the supervising official had knowledge of and acquiesced in a
subordinates' violations.  *See* <u>Robinson v. City of Pittsburgh</u>, 120
F.3d 1286, 1293 (3d Cir. 1997); <u>Baker v. Monroe Twp.</u>, 50 F.3d
1186, 1190-91 (3d Cir. 1995).

   **D. Defendants' Motion for Judgment on the Pleadings**

   1.   <u>Lack of Personal Involvement</u>

   Defendants first argue that Plaintiff has failed to allege
personal involvement against Defendants Superintendent Blaine,
Deputy Superintendent Miller, Chief Hearing Examiner Bitner,
members of the Program Review Committee (PRC), Grievance
Coordinator D'Elleto, and Counselor Torrets.  This Court agrees.

   "A civil rights complaint is adequate where it states the
conduct, time, place, and persons responsible." <u>Evancho v.
Fisher</u>, 423 F.3d at 353.  As Defendants point out, Plaintiff's
amended complaint fails to allege facts that, if proven, would
show that Defendants Blaine, Miller, Bitner, members of the PRC,
D'Elleto and Torrets had any personal involvement in the alleged
violations of Plaintiff's constitutional rights.

   In this regard, Plaintiff claims that Defendants Blaine,
D'Elletto, the members of the PRC, and Torrets denied him the use
of the appeal process with regards to the misconduct hearings.
Am. Compl. ¶ 68.  These assertions do not satisfy Plaintiff's
requirement to plead with appropriate particularity.  <u>Evancho</u>, 423

- 12 -

F.3d at 353 (concluding that plaintiff's amended complaint did not meet the Third Circuit's standard for a legally adequate civil rights complaint).   Neither does Plaintiff's assertion that he sent Blaine an inmate request complaining about the assessment hearing and never received a response.   Am. Compl., ¶¶ 46, 63. *See* <u>Bullock v. Horn</u>, 2000 WL 1839171, *5 ((M.D. Pa., Oct. 31, 2000) ("Merely asserting that Plaintiff sent letters to these two defendants will not suffice.   Indeed, it would be anomalous to suggest that a prisoner could name as a Defendant any governmental official whatsoever, no matter how far removed in the chain of authority from the actual conduct in question, simply by sending that official a letter.").   Moreover, these allegations contradict his assertion that he fully appealed his misconducts through all three levels of review.

Plaintiff further alleges that Superintendent Blaine and Deputy Superintendent Miller are liable due to policies implemented at the prison that denied him receipt of misconduct reports, inmate witness forms, inmate version forms, and a pen. This allegation also is at odds with Plaintiff's allegations in his Amended Complaint where he claims that he was entitled to these items pursuant to DOC policy.   Thus, not only do Plaintiff's allegations fail to satisfy the particularity requirement, they contradict themselves.   In fact, DOC policy DC-ADM 801, "Inmate Discipline" sets forth specific policy requiring an inmate charged

with a misconduct to be given a copy of the misconduct report, the DC-141, Part II(A), Inmate Request for Representation and Witnesses form, the DC-141, Part II(C), Hearing Supplement, Inmate Version, and Witness Statement form.  DC-ADM 801, ¶ VI.B.

Plaintiff's allegations that Blaine and Miller are liable for policies implemented at the prison that denied him receipt of misconduct reports are conclusory and insufficient to allege liability under 42 U.S.C. § 1983 as a matter of law.

Finally, Plaintiff's assertion that any of the Defendants are liable due to their involvement in reviewing and/or affirming the misconduct decisions and through their unfavorable treatment to his inmate requests does not state a constitutional violation. First, as Defendants point out, the filing of a grievance is not sufficient to show the actual knowledge necessary for personal involvement.  Rode, 845 F.2d at 1208.  Moreover, mere concurrence in a prison administrative appeal process does not implicate a constitutional concern.  Garfield v. Davis, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983) (holding that administrative review of prison disciplinary hearings is not constitutionally guaranteed and, therefore, plaintiff's claims with respect to the Program Review Committee's decision did not rise to constitutional significance); Harmon v. Divirgilis, 2005 WL 387591 (E.D. Pa. Feb. 16, 2005) (there is no constitutional right to administrative review of prison disciplinary proceedings).

- 14 -

While prisoners have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts, which is not compromised by the failure of the prison to address his grievances.  Wilson v. Horn, 971 F.Supp. 943, 947 (E.D. Pa. 1997), *aff'd*, 142 F.3d 430 (3d Cir. 1988) (Table).  Thus, Plaintiff's allegations fail to assert a constitutional violation against Defendants Blaine, Miller, Bitner, members of the PRC, D'Elletto and Torrets.  Accordingly, Defendants Blaine, Miller, Bitner, members of the PRC, D'Elletto and Torrets are entitled to judgment as a matter of law.  An appropriate order follows.


2.   Procedural Due Process

Defendants next argue that Plaintiff failed to allege any violation of his Due Process rights as guaranteed by the Fourteenth Amendment.  In order to state a claim for relief under the Due Process Clause of the Fourteenth Amendment, a plaintiff must set forth facts that demonstrate that he had a "protected liberty interest" that was impaired by the defendants actions. Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972). Plaintiff asserts that he has suffered a due process violation because the conditions of his lengthy confinement in disciplinary custody constitute an atypical and significant hardship in relation to the ordinary incidents of

prison life under <u>Sandin v. Conner</u>, 515 U.S. 472 (1995).  In
<u>Sandin</u>, the Supreme Court pronounced a new standard for
determining whether prison conditions deprive a prisoner of a
liberty interest that is protected by due process guarantees.
Specifically, the Supreme Court held that prison conditions do not
impact a protectable liberty interest unless they result in an
"<u>atypical and significant hardship on the inmate in relation to
the ordinary incidents of prison life</u>."  <u>Sandin</u>, 515 U.S. at 483
(emphasis added).

     At issue in <u>Sandin</u> was whether the plaintiff's thirty-day
detention in disciplinary custody in a Hawaii prison impacted any
protectable liberty interest under the Fourteenth Amendment.  The
Supreme Court concluded that the prisoner in <u>Sandin</u> did not have a
protected liberty interest in remaining free of disciplinary
detention or segregation because his thirty-day disciplinary
detention, though punitive, did not present a dramatic departure
from the basic conditions of his sentence.  In finding that the
prisoner's 30-day confinement in disciplinary custody did not
present the type of atypical, significant deprivation in which a
State might conceivably create a liberty interest, the Supreme
Court noted the following three factors:  1) the relatively short
duration of the segregation; 2) the similarity between the
conditions of confinement in disciplinary segregation and the
conditions imposed upon other inmates; and 3) the lack of any

direct collateral consequences affecting the length of the prisoner's underlying sentence.  Applying this new test, the Supreme Court concluded that the prisoner in <u>Sandin</u> did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the basic conditions of his sentence.

In deciding whether a protected liberty interest exists under <u>Sandin</u>, a federal court must consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions.  <u>Mitchell v. Horn</u>, 318 F.3d 523, 532 (3d Cir. 2003) (citing <u>Shoats v. Horn</u>, 213 F.3d 140, 144 (3d Cir. 2000)).  In this case, Plaintiff alleges that, as a result of the misconducts outlined above, he has received 1080 days of DC.  He alleges that prisoners within DC are not provided with the same caloric diet as other prisoners and that he has lost fifty pounds since being housed in the RHU.  In addition, he asserts that DC prisoners are exposed to contaminated and improperly cleaned eating utensils, are given unwashed garments to use during exercise period in inclement weather, have severely limited access to emergency medical treatment, are denied confidentiality in medical treatment as such treatment is conducted at the cell door within hearing of other inmates, are generally denied medical and mental health treatment, have

severely restricted access to legal materials, are unable to make legal phone calls, are not permitted to receive inmate legal assistance, are not allowed to work or earn idle pay or participate in education, vocational and rehabilitative programs, are not permitted to make personal phone calls, are not permitted to participate in group religious activities, are prohibited from contact visits, and are confined in their cells 23 hours per day.

In Mitchell v. Horn, 318 F.3d 523, the prisoner filed a pro se action under 42 U.S.C. 1983 and alleged that a correctional officer planted contraband near his locker because he filed complaints against that officer, he was denied a fair hearing on the contraband charges, and, as a result, he was placed in disciplinary confinement for several months, including four days in a cell that was smeared with feces and infested with flies. The District Court dismissed the complaint *sua sponte* on the basis that it did not state a violation of his constitutional rights. Specifically, the District Court held that the prisoner's confinement did not implicate a liberty interest protected by the due process clause.

The Court of Appeals for the Third Circuit reversed the District Court's judgment and remanded the matter for further proceedings.  With respect to his due process claim, the Court of Appeals initially noted that the Sandin test required a fact-specific inquiry considering the duration of the confinement and

the conditions of that confinement.  <u>Mitchell</u>, 318 F.3d at 532.

Although the Court determined that the Plaintiff's allegations

were similar to those rejected in <u>Griffin</u>, the Court held that,

given the procedural posture of the case, the record was not

sufficiently developed for it to determine whether the inmate's

conditions of confinement implicated a liberty interest under the

fact intensive inquiry required under <u>Sandin</u>.  *Id*.

In the instant action, Plaintiff claims that he will be

confined in disciplinary custody for a period of 1080 days due to

the alleged false misconduct charges he has received.  The Court

of Appeals for the Third Circuit has noted that disciplinary

custody is the maximum restrictive status for inmates in the

Pennsylvania prison system.  *See* <u>Mitchell</u>, 318 F.3d at 532, n.5.

In addition, Plaintiff has made allegations that the conditions of

his confinement are particularly restrictive.  Like the situation

in <u>Mitchell</u>, this Court is unable to undertake the fact intensive

inquiry required under <u>Sandin</u> based on the Defendants' Motion for

Judgment on the Pleadings.  Due to the alleged duration of his

confinement and the alleged conditions of his confinement, which

this Court is required to accept as true, this Court is required

to follow the directive in <u>Mitchell</u> and deny Defendants' Motion

for Judgment on the Pleadings with respect to Plaintiff's

procedural due process claim.  *Accord* <u>Hamm v. Rendell</u>,  166 Fed.

Appx. 599, 603 (3d Cir. 2006) (remanding case back to the District

Court where it did not engage in the requisite factual inquiry in
regard to a 30-day disciplinary confinement).[1]

3.   Eighth Amendment

As a final matter, Defendants assert that Plaintiff has
failed to state a claim upon which relief may be granted under the
Eighth Amendment.  The Eighth Amendment's prohibition against
cruel and unusual punishment guarantees that prison officials must
provide humane conditions of confinement.  In this regard, Prison
officials must ensure that inmates receive adequate food,
clothing, shelter and medical care, and must "take reasonable
measures to guarantee the safety of the inmates."  Farmer v.
Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468
U.S. 517, 526-27 (1984)).

In order to make out a prima facie case that a prison
official's actions violate the Eighth Amendment's prohibition
against cruel and unusual punishment, an inmate must show two
elements.  First, a prisoner must show that the condition, either
alone or in combination with other conditions, deprived him of
"the minimal civilized measure of life's necessities," or at least

_____

1.   This Court further notes that Plaintiff also has stated a
violation of his Due Process rights in regards to the liens
assessed against his account.  Inmates have a property interest
in the money in their inmate account, which they cannot be
deprived of without procedural due process.  Reynolds v.
Wagner, 128 F.3d 166, 179 (3d Cir. 1997).  Because Defendants
did not address this issue, this claim remains pending in the
current action.

a "single, identifiable human need." <u>Wilson v. Seiter</u>, 501 U.S.
294 (1991) (citing <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981)).
The Supreme Court has explained that the first showing requires
the court <u>objectively</u> to determine whether the deprivation of the
basic human need was "sufficiently serious."

> [E]xtreme deprivations are required to make
> out a conditions of confinement claim.
> Because routine discomfort is "part of the
> penalty that criminal offenders pay for their
> offenses against society, only those
> deprivations denying 'the minimal civilized
> measure of life's necessities' are
> sufficiently grave to form the basis of an
> Eighth Amendment violation."

<u>Hudson v. McMillan</u>, 503 U.S. 1, 9 (1992) (citations omitted).

Second, an inmate must demonstrate deliberate indifference to
prison conditions on the part of prison officials. <u>Farmer</u>, 511
U.S. at 833; <u>Wilson</u>, 501 U.S. at 297; <u>Rhodes</u>, 452 U.S. at 347.
The second prong requires a court <u>subjectively</u> to determine
whether the officials acted with a sufficiently culpable state of
mind. *Id*. "[O]nly the unnecessary and wanton infliction of pain
implicates the Eighth Amendment." <u>Farmer</u>, 511 U.S. at 834
(quotation omitted).

> [A] prison official cannot be found liable
> under the Eighth Amendment for denying an
> inmate humane conditions of confinement unless
> the official knows of and disregards an
> excessive risk to inmate health or safety; the
> official must both be aware of facts from
> which the inference could be drawn that a
> substantial risk of serious harm exists, and
> he must also draw the inference. . . .   The
> Eighth Amendment does not outlaw cruel and

> unusual "conditions"; it outlaws cruel and
> unusual "punishments."

_Farmer_, 511 U.S. at 838.  Furthermore, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause."  _Id._, 511 U.S. at 845.  Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

To the extent that Plaintiff is alleging that the amount of time that he will be required to spend in the RHU as a result of his multiple misconducts is "cruel and unusual" under the Eighth Amendment, his complaint fails to state a claim upon which relief may be granted.  Neither classification nor confinement to segregation, either administrative or punitive, implicates the Cruel and Unusual Punishment Clause of the Eighth Amendment unless the conditions themselves are cruel and unusual.  _Hutto v. Finney_, 437 U.S. 678, 686 (1978); _Spaight v. Coughlin_, 104 F.3d 350 (Table), 1996 WL 518507 (2d Cir. 1996), _cert. denied_, 117 S.Ct. 972 (1997); _Young v. Quinlan_, 960 F.2d 351, 363 (3d Cir. 1992); _Sheley v. Dugger_, 833 F.2d 1420, 1428-29 (11th Cir. 1987); _Gibson v. Lynch_, 652 F.2d 348, 352 (3d Cir. 1981) ("administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment") (citing _Hutto_), _cert. denied_, 462 U.S. 1137 (1983).  _Accord Griffin v. Vaughn_, 112 F.3d.

703 (3d Cir. 1997) (holding that the restrictive conditions in administrative custody in the Pennsylvania state correctional institutions do not, in and of themselves, violate the Eighth Amendment).

In the instant action, however, Plaintiff alleges that he has lost fifty pounds because DC inmates receive less food than other inmates. He further alleges that he is exposed to contaminated food utensils and unwashed garments, which pose a significant health risk. Finally, he claims to have been denied adequate medical care on a number of occasions. These allegations, taken as true as this Court is required to do, are sufficient to withstand Defendants' Motion. *See* Sanville v. McCaughtry, 266 F.3d 724, 734 (7th Cir. 2001) (suggesting that prisoner who lost forty-five pounds on nutri-loaf diet might have an Eighth Amendment claim); Simmons v. Cook, 154 F.3d 805, 809 (8th Cir. 1998). Notwithstanding, Plaintiff faces a heavy burden in establishing his entitlement to recovery on the basis of an Eighth Amendment violation. *See* Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985)("[t]he Constitution requires that prisoners be provided reasonably adequate food. A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required."), *cert. denied*, 475 U.S 1096 (1986).

### D. Motion for Protective Order

Also pending before the Court is Defendants' Motion for a Protective Order requesting a stay of discovery until disposition of the pending motion for judgment on the pleadings (doc. no. 92). Because the Court now is ruling on the pending motion, the Defendant's Motion for a Protective Order should be denied as moot.

<u>ORDER</u>

**AND NOW**, this   17th   day of May, 2006;

**IT IS HEREBY ORDERED** that the Motion for Judgment on the Pleadings is **GRANTED** to the extent that it seeks dismissal of Plaintiff's claims against Defendants Blaine, Miller, Bitner, members of the Program Review Committee, D'Eletto and Torrets; it is **DENIED** as to Plaintiff's claims against the remaining Defendants alleging violations of his rights as protected by the Fourteenth and Eighth Amendments.

It is further **ORDERED** that Defendant's Motion for a Protective Order (doc. no. 92) is **DENIED** as moot.

  /s/Lisa Pupo Lenihan
Lisa Pupo Lenihan
United States Magistrate Judge

```
cc:  Sean Pressley, CG-4129
     SCI Camp Hill
     P.O. Box 200
     Camp Hill, PA 17001 SCI-Greene

     Craig E. Maravich
     Deputy Attorney General
     Office of Attorney General
     Fifth Floor, Manor Complex
     564 Forbes Avenue
     Pittsburgh, Pa. 15219
```