IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SEAN PRESSLEY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 01-2468 |
| | ) | Consent Case |
| SUPT. C. BLAINE; SUPT. J. MILLER; | ) | Magistrate Judge Lenihan |
| JOHN DOE no. 1; JOHN DOE no.2; | ) | |
| JOHN DOE no. 3; JOHN DOE no. 4; | ) | |
| JOHN DOE no. 5; JOHN DOE no. 6; | ) | |
| H/E B. ANSELL; C/O WISYAUSKI; | ) | |
| C/O MCCLURE; H/E KERRI CROSS; | ) | |
| C/O GIFFORD; C/O SMITH; H/E R. | ) | |
| BITNER; UNKNOWN PRC MEMBERS; | ) | |
| G/S S. DELETTO; K. PATTERSON, | ) | |
| FISCAL T/C; C/O HAWKENBERRY; | ) | |
| TORRETS, COUNSELOR, sued in their | ) | |
| individual and official | ) | |
| capacities, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Sean Pressley, an inmate incarcerated at the State Correctional Institution at Greene, located in Waynesburg, Pennsylvania (SCI-Greene), commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983. Named as Defendants are various present and/or former employees of the Pennsylvania Department of Corrections (DOC). Plaintiff's remaining claims allege violations of his rights as protected by the Eighth and Fourteenth Amendments. Specifically, he seeks to impose liability against Defendants on the basis of alleged false misconducts he has received and for which he has received 1080 days of disciplinary confinement. He also claims procedural due process claims with regard to an assessment imposed against him for

destruction of state property. He further seeks to impose liability on the basis of his conditions of confinement concerning cleanliness of his cell, the alleged use of dirty food utensils, the alleged use of dirty exercise garments, and a lower caloric diet that caused him to lose fifty pounds. His allegations are set forth in detail in this Court's earlier order dated May 17, 2006 (doc. no. 109). For the reasons set forth below, Defendants are entitled to summary judgment as to Plaintiff's remaining claims. An appropriate order follows.

## A. Standard of Review - Summary Judgment

Defendants have filed a Motion for Summary Judgment pursuant to Fed. Rule Civ. Proc. 56. Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, ". . . the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. Rule Civ. Proc. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact.

Once that burden has been met, the non-moving party must set forth ". . . specific facts showing that there is a <u>genuine issue for trial</u> . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. <u>Matsushita Elec. Ind. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). The inquiry, then, involves determining " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " <u>Brown v. Grabowski</u>, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting <u>Anderson</u>, 477 U.S. at 251-52). If a court concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. <u>Anderson</u>, 477 U.S. at 249-50.

## B. Liability under 42 U.S.C. § 1983

Plaintiff asserts liability against Defendants pursuant to 42 U.S.C. § 1983. In order to assert liability under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. <u>Parratt v. Taylor</u>, 451

- 3 -

U.S. 527, 535 (1981), *overruled in part on other grounds*, <u>Daniels v. Williams</u>, 474 U.S. 327, 330-331 (1986).

Plaintiff's claims against the remaining Defendants allege violations of his rights as protected by the Eighth and Fourteenth Amendments. These claims are discussed below.

## C. Eighth Amendment

In the instant action Plaintiff alleges that he has lost fifty pounds because DC inmates receive less food than other inmates. He further alleges that he is exposed to contaminated food utensils and unwashed garments, which pose a significant health risk. Finally, he claims to have been denied adequate medical care on a number of occasions.

### 1. <u>Failure to Exhaust Claims</u>

First, Plaintiff is not entitled to relief on any of his Eighth Amendment claims as he failed to comply with the mandatory exhaustion requirement required by the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996). In this regard, through the PLRA, Congress amended 42 U.S.C. § 1997e(a) to prohibit prisoners from bringing an action with respect to prison conditions pursuant to 42 U.S.C. § 1983 or any other federal law, until such administrative remedies as are available are exhausted. Specifically, the act provides, in pertinent part, as follows.

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law,

by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The available administrative remedies for Pennsylvania inmates are codified in the Pennsylvania Department of Corrections Policy Statement No. DC-ADM 804-1, entitled "Consolidated Inmate Grievance Review System." *See, e.g.* <u>Mitchell v. Horn</u>, 318 F.3d 523 (2003) (discussing DOC Grievance System).[1] The purpose of the grievance system is to ensure that "every individual committed to [DOC] custody shall have access to a formal procedure through which the resolution of problems or other issues of concern arising during the course of confinement may be sought. For every such issue, there shall be a forum for review and two avenues of appeal. The formal procedure shall be known as the Inmate Grievance System." DC-ADM 804 ¶ V. The DOC grievance system applies to all state correctional institutions and provides three levels of review: 1) initial review by the facility grievance coordinator; 2) appeal of initial review to the superintendent or regional director; and 3) final appeal to the chief hearing examiner.

_____

1.  *See also* 37 Pa. Code § 93.9(a) (1999) (establishing requirement for DOC to establish an inmate grievance system) DOC policies, including the grievance system policy may be accessed on the worldwide web at  <u>http://www.cor.state.pa.us/</u> standards/lib/standards/DC-ADM_804_Inmate_Grievances.pdf.

Specifically, inmate grievances must be in writing and in the format provided on the forms supplied by the institution. DC-ADM 804 ¶ (VI)(A)(1)(f). An initial grievance must be submitted by the inmate to the Facility Grievance Coordinator within fifteen (15) working days after the event upon which the claim is based. DC-ADM 804 ¶ (VI)(A)(1)(h). Specific procedures for the appeal by an inmate of an unsatisfactory decision on a grievance are also provided.

The United States Court of Appeals for the Third Circuit analyzed the applicability of the exhaustion requirement in 42 U.S.C. § 1997e in Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000) (Bivens action brought by a federal inmate) and Booth v. Churner, 206 F.3d 289 (3d Cir. 2000) (civil rights action brought by a state prisoner). In each of these cases, the Court of Appeals announced a bright line rule that inmate-plaintiffs must exhaust all available administrative remedies before they can file an action in federal court concerning prison conditions. In so holding, the court specifically rejected the notion that there is ever a futility exception to section 1997e(a)'s mandatory exhaustion requirement. Booth, 206 F.3d at 300; Nyhuis, 204 F.3d at 66. A unanimous Supreme Court affirmed the Court of Appeals' holding in Booth v. Churner, 532 U.S. 731 (2001) where the Court confirmed that in the PLRA Congress mandated exhaustion of administrative remedies, regardless of the relief offered through

those administrative procedures.   As stated by the Third Circuit, "it is beyond the power of this court--or any other--to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." <u>Nyhuis</u>, 204 F.3d at 73 (quotation omitted).   The Supreme Court of the United States reiterated this tenet when it affirmed the Third Circuit's holding in <u>Booth</u>.

Moreover, the Court of Appeals for the Third Circuit has held that a prisoner's failure to comply with the procedural and substantive requirements of DOC's grievance policy, as set forth in DC ADM 804, results in procedural default, thereby precluding an action in federal court.   *See* <u>Spruill v. Gillis</u>, 372 F.3d 218 (3d Cir. 2004).   In so holding, the Court of Appeals specifically held that failing to identify accused individuals in a grievance amounted to procedural default because the regulations so required.[2]

The United States Supreme Court adopted a similar holding in <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378 (2006) wherein it held that an untimely or otherwise procedurally

_____

2.   The relevant regulations provide as follows:  "The inmate shall include a statement of the facts relevant to the claim. The inmate should identify any persons who may have information that could be helpful in resolving the grievance.   The inmate should also include information on attempts to resolve the matter informally. DC-ADM 804, Part VI.A.1.d.

defective administrative grievance or appeal does not satisfy the PLRA's mandatory exhaustion requirement.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." This Court has described the doctrine as follows: "[A]s a general rule ⋯ courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

<u>Woodford</u>, 126 S. Ct. at 2385-2386 (internal citations, quotations and footnotes omitted).

The Court further noted that "[c]onstruing § 1997e(a) to require proper exhaustion also fits with the general scheme of the PLRA, whereas respondent's interpretation would turn that provision into a largely useless appendage. The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." <u>Woodard</u>, 126

S. Ct. at 2387. The Court concluded that the benefits of exhaustion could only be realized if the prison grievance system is given a fair opportunity to consider the claims, which required the grievant to comply with the procedural rules. Woodford, 126 S.Ct. at 2388.

The record evidence in this action shows that Plaintiff filed Grievance Nos. 3391, 11467, 11486 and 11487 (doc. nos. 129- 4, pp. 1- 17) concerning issues regarding his cell condition, his modified diet, medical concerns and dirty exercise garments. The record evidence further provides that Plaintiff did not pursue any of these grievances to final review. The Court of Appeals for the Third Circuit specifically has held that the failure to submit the required documentation for final review constitutes procedural default and results in dismissal of the Complaint. *See* Eakle v. Palakovich, 200 Fed. Appx. 155, 156, 2006 WL 2917531, *1 (3d Cir. 2006).

In response, Plaintiff makes the bald unsupported statement that prison officials interfered with his ability to appeal his grievances to all three levels (doc. no. 137, p. 12). Plaintiff cannot create a material issue of fact simply by making these vague, unsupported allegations. In this regard, former Chief Judge D. Brooks Smith (now Circuit Judge for the United States Court of Appeals for the Third Circuit), specifically held that:

allowing prisoners to avoid the PLRA's exhaustion requirement merely by alleging that they were prevented from doing so would undermine the very purpose of the PLRA. Congress passed the PLRA "largely in response to concerns about the heavy volume of frivolous prison litigation in federal courts." [Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000)]. In Nyhuis, the Third Circuit found that carving a futility exception into the PLRA would frustrate the Congressional purpose to stem the tide of prisoner lawsuits. Id. In addition, the Court noted that such an exception would merely allow clever inmates to plead their way around the PLRA's exhaustion mandate by alleging that exhaustion would be futile. Id. I confront the same problem in the instant case. Adopting a rule that permits prisoners to avoid the exhaustion requirements merely by claiming that they were prevented from filing a grievance would create an exception to the PLRA large enough to swallow the general rule. Based on the Third Circuit's holding that permitting such an exception would undermine Congressional purpose, I refuse to adopt such an exception today.

Gallman v. Horn, Civil Action 99-138J (W.D. Pa. October 31, 2000) (Mem. Ord. pp. 3-4).

Here, it is Plaintiff's burden to come forward with evidence to defeat Defendants' Motion for Summary Judgment. His bald statements do not suffice. Thus, in the absence of any controlling authority to the contrary, this Court is required to follow the directive of the United States Supreme Court and grant the Motion for Summary Judgment due to the Plaintiff's failure to have exhausted his available administrative remedies. *Accord* Scerbo v. Orefice 2006 WL 3762000, *8 (M. D. Pa. Dec. 20, 2006)

(holding that claim set forth in Plaintiff's grievance filed over nine months after the alleged incident was procedurally defaulted).

    2.   <u>No Demonstrable Eighth Amendment Violations</u>

Moreover, the record evidence reveals that Plaintiff's conditions of confinement claims are unfounded and completely without merit. The Eighth Amendment's prohibition against cruel and unusual punishment guarantees that prison officials must provide humane conditions of confinement. Prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-27 (1984)). In order to prove an Eighth Amendment claim, a prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991) (citing <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981)). The Supreme Court has explained that the first showing requires the court <u>objectively</u> to determine whether the deprivation of the basic human need was "sufficiently serious."

> [E]xtreme deprivations are required to make
> out a conditions-of-confinement claim.
> Because routine discomfort is "part of the
> penalty that criminal offenders pay for their

- 11 -

> offenses against society, only those
> deprivations denying 'the minimal civilized
> measure of life's necessities' are
> sufficiently grave to form the basis of an
> Eighth Amendment violation."

Hudson v. McMillan, 503 U.S. 1, 9 (1992) (citations omitted).

Second, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials. Farmer, 511 U.S. at 833; Wilson, 501 U.S. at 297; Rhodes, 452 U.S. at 347. The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind. *Id*. "[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Farmer, 511 U.S. at 834 (quotation omitted).

> [A] prison official cannot be found liable
> under the Eighth Amendment for denying an
> inmate humane conditions of confinement unless
> the official knows of and disregards an
> excessive risk to inmate health or safety; the
> official must both be aware of facts from
> which the inference could be drawn that a
> substantial risk of serious harm exists, and
> he must also draw the inference. . . . The
> Eighth Amendment does not outlaw cruel and
> unusual "conditions"; it outlaws cruel and
> unusual "punishments."

Farmer, 511 U.S. at 838. Furthermore, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Id*., 511 U.S. at 845. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates

face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

Here, Plaintiff simply has not come forward with any evidence that he was exposed to objectively harmful conditions and that any Defendant was deliberately indifferent to it. *Accord* Rivera v. Pennsylvania Dept. of Corrections 837 A.2d 525, 530-532 (Pa. Super. 2003). Specifically, the responses to his grievances indicate that the observation cells Plaintiff complained were filthy are cleaned between placements and checked by Unit Staff before use. In addition, the responses indicate that Plaintiff received medical attention when he requested and that the outer exercise garments are regularly laundered. Moreover, with respect to his claim of insufficient daily calories, it appears that Plaintiff was responsible for his loss of weight. In September of 2001, Plaintiff refused all meals for a period of ten days requiring a medical evaluation. In addition, Plaintiff twice was placed on a Behavior Modified Diet for violations of the rules.[3]

Plaintiff has failed to evidence conditions of his confinement that satisfy the objective component of an Eighth Amendment claim. *Accord* Smith v. Copeland, 87 F.3d 265, 268 (8th

---

3. Pursuant to DOC. ADM-610-1, inmates may be placed on Behavior Modified Meals for a term not exceeding seven days. Such meals may be a nutritionally balanced bag meal consisting of food items served to the general population or a food loaf consisting of various items blended together and baked that contain all the necessary caloric and nutritional requirements (doc. no. 129-2, pp. 50-60).

Cir. 1996) (holding that inmate's confinement in a cell for four days with an overflowing toilet, during which time he was made to endure the stench of his own feces and urine, did not rise to the level of an Eighth Amendment violation"); Davis v. Scott, 157 F.3d 1003, 1004 (5th Cir. 1998) (inmate being placed in cell with blood on the walls and excretion on the floors for three days did not meet the objective component of the Eighth Amendment, especially in view of fact that cleaning supplies were made available to him). Consequently, Defendants are entitled to summary judgment as to Plaintiff's Eighth Amendment claims.

Similarly, Plaintiff has failed to prove his claims of inadequate medical care. When claiming a denial of adequate medical care, an inmate must prove that he suffered from an objectively serious medical need. A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988). Here, Plaintiff has not submitted any evidence proving that he suffered from any serious medical need.

Moreover, Plaintiff has failed to demonstrate that the Defendants were deliberately indifferent to his medical needs. The "deliberate indifference" standard for purposes of liability under section 1983 is a stringent standard of fault requiring proof that a defendant disregarded a known or obvious consequence of his action. <u>Board of County Commissioners of Bryan County v. Brown</u>, 520 U.S. 397, 410 (1997). The defendant must be both aware of facts from which the inference could be drawn that a substantial harm exists and he must also draw the inference. <u>Farmer v. Brennan</u>, 511 U.S. at 837. An official is not deliberately indifferent if "he fails to alleviate a significant risk that he should have identified." *Id*. Moreover, deliberate indifference to a serious medical need of a prisoner is distinguishable from a negligent diagnosis or treatment of a medical condition; only the former conduct violates the Eighth Amendment. Medical malpractice may give rise to a tort claim in state court but does not necessarily rise to the level of a federal constitutional violation. <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 185 (3d Cir. 1993); <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 67 (3d Cir. 1993).

Plaintiff claims that lockdown inmates must sign up for medical call and initially are examined by medical personnel standing outside their cells. Such treatment does not suggest that any of the Defendants were deliberately indifferent to his

medical needs. While an intentional refusal to provide <u>any</u> medical treatment to an inmate suffering from a serious medical need manifests deliberate indifference and is actionable under the Eighth Amendment, the Eighth Amendment does not require that a prisoner receive every medical treatment that he requests or that is available elsewhere. A disagreement as to the appropriate choice of medical treatment does not give rise to a constitutional violation because the "right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice." <u>Layne v. Vinzant</u>, 657 F.2d 468, 473 (1st Cir. 1981). Mere disagreements over medical judgment do not state Eighth Amendment claims as there are typically several acceptable ways to treat an illness. <u>White v. Napoleon</u>, 897 F.2d 103, 110 (3d Cir. 1990) (citations omitted). *Accord* <u>Young v. Quinlan</u>, 960 F.2d 351, 358 n.18 (3d Cir. 1992) (an inmate's disagreement with prison personnel over the exercise of medical judgment does not state claim for relief under section 1983).

Taken as true, Plaintiff's allegations and the record evidence simply do not show that any of the Defendants violated Plaintiff's rights as protected by the Eighth Amendment. Thus, Defendants are entitled to summary judgment with respect to this claim.

### D. Fourteenth Amendment

Plaintiff's remaining claims allege violations of his Due Process rights as guaranteed by the Fourteenth Amendment. In order to state a claim for relief under the Due Process Clause of the Fourteenth Amendment, a plaintiff must set forth facts that demonstrate that he had a protected liberty or property interest that was impaired by the defendants actions. Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972). Plaintiff asserts that he has suffered a due process violation with respect to his lengthy confinement in disciplinary custody. In addition, he claims that his due process rights were violated by assessments made against him for his destruction of government property.

### 1. Liberty Interest

Plaintiff's first claim must be considered under the directive set forth in Sandin v. Conner, 515 U.S. 472 (1995) where the Supreme Court pronounced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by due process guarantees. Specifically, the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483 (emphasis added).

At issue in <u>Sandin</u> was whether the plaintiff's thirty-day detention in disciplinary custody in a Hawaii prison impacted any protectable liberty interest under the Fourteenth Amendment. The Supreme Court concluded that the prisoner in <u>Sandin</u> did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the basic conditions of his sentence. In finding that the prisoner's 30-day confinement in disciplinary custody did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest, the Supreme Court noted the following three factors: 1) the relatively short duration of the segregation; 2) the similarity between the conditions of confinement in disciplinary segregation and the conditions imposed upon other inmates; and 3) the lack of any direct collateral consequences affecting the length of the prisoner's underlying sentence. Applying this new test, the Supreme Court concluded that the prisoner in <u>Sandin</u> did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the basic conditions of his sentence.

In deciding whether a protected liberty interest exists under <u>Sandin</u>, a federal court must consider the duration of the

disciplinary confinement and the conditions of that confinement in relation to other prison conditions. <u>Mitchell v. Horn</u>, 318 F.3d 523, 532 (3d Cir. 2003) (citing <u>Shoats v. Horn</u>, 213 F.3d 140, 144 (3d Cir. 2000)). In this case, Plaintiff alleges that, as a result of the misconducts outlined above, he has received 1080 days of DC. Recently, the Court of Appeals for the Third Circuit held that an inmate sentenced to an aggregate of 930 days in disciplinary confinement did not constitute an atypical and significant hardship sufficient to trigger a liberty interest under <u>Sandin</u>. <u>Young v. Beard</u>, 227 Fed. Appx. 138, 2007 WL 824172 (3d Cir. 2007). If 930 days does not continue an atypical hardship, a mere five months more does not either. Thus, Plaintiff has failed to show that he was entitled to due process protections with regard to his disciplinary confinement.

Moreover, even if the Court were to find a protected liberty interest, Plaintiff has failed to show a violation of his due process rights. In this regard, it long has been held that due process is a flexible concept; the means of providing a meaningful opportunity to be heard depending upon the particular circumstances of each situation. <u>Hewitt v. Helms</u>, 459 U.S. 460, 471 (1983); <u>Greenholtz</u>, 442 U.S. at 12; <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972). In <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556, 563 (1974), the Supreme Court determined that prison disciplinary proceedings are not part of a criminal prosecution and, therefore,

the full panoply of rights due a defendant in such proceedings do not apply. In so holding, the Court determined that an inmate may not be deprived of a liberty interest unless the inmate receives: 1) written notice of the hearing at least 24 hours in advance; 2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and 3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.[4]

Moreover, the appropriate standard for federal court review of a prison disciplinary decision implicating a prisoner's liberty interest is that there be "some evidence" in the record to support the determination. <u>Superintendent, Massachusetts Correctional Institution, Walpole v. Hill</u>, 472 U.S. 445, 455 (1985). This standard is met if there is some evidence from which the conclusion of the administrative tribunal could be deduced. <u>Id</u>.

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, <u>the relevant question is whether there is any evidence in the record</u>

---

4. In <u>Griffin v. Spratt</u>, 969 F.2d 16, 19 (3d Cir. 1992), the Court of Appeals for the Third Circuit held that the above due process requirements must be satisfied in a prison disciplinary hearing where a liberty interest is implicated.

> that could support the conclusion reached by
> the disciplinary board.
>
> . . .
>
> The fundamental fairness guaranteed by the Due
> Process Clause does not require courts to set
> aside decisions of prison administrators that
> have some basis in fact.

<u>Hill</u>, 472 U.S. at 455-56 (citations omitted) (emphasis added).

<u>Hill</u> makes manifest that the balance of interests in prison disciplinary cases leads to minimal scrutiny of prison decisions by the federal courts. In the case at bar, the basis for the Hearing Examiners' conclusions are provided for in the misconduct hearing reports. Each one specifically provides that there was some evidence to support the charges[5] (doc. no. 129-3, pp. 1-35).

A federal court does not sit as a trial *de novo* with regard to prison disciplinary proceedings. Rather, it sits to determine whether there were constitutional errors in those proceedings. It was the function of the hearing examiner, as the

---

5. *See, e.g.*, <u>Hill</u>, 472 U.S. at 456 (evidence in the form of testimony from prison guard and copies of written report sufficient to meet due process requirements); <u>Griffin v. Spratt</u>, 969 F.2d 16 (3d Cir. 1992) (non-scientific testimony evidence indicating that certain substances were contraband constitutes some evidence to uphold prison disciplinary proceeding); <u>Choice v. Coughlin</u>, 1996 WL 325627 (S.D.N.Y. 1996) (decision to confine inmate the SHU based on plaintiff's letter constitutes "some evidence"); <u>Cardenas v. Wigen</u>, 921 F. Supp. 286, 289 (E.D. Pa. 1996) ("some evidence" standard may be satisfied by application of the constructive possession doctrine).

factfinder, to make credibility determinations and weigh the evidence presented. Here, the Petitioner was given the opportunity to present his defense and he declined to do so.

Plaintiff tries to allege a due process violation by complaining that he did not receive copies of his misconducts and, therefore, was unable to properly prepare a defense. This argument does not succeed to show a due process violation for two reasons.

First, assuming he did not receive advance notice of his misconducts, a fact placed in doubt by the record evidence of correctional officers stating that the misconducts were taped onto his door in full view, Plaintiff does not show how he was prejudiced by his alleged failure to receive a written copy of the charges.

In this regard, several federal courts, including the Court of Appeals for the Third Circuit, specifically have held that the "harmless error" rule applies to federal court review of prison disciplinary actions. *See* Elkin v. Fauver, 969 F.2d 48 (3d Cir.), *cert. denied*, 506 U.S. 977 (1992).[6] Accordingly, it is

_____

6 *See also* Powell v. Coughlin, 953 F.2d 744 (2d Cir. 1991) (error for district court to overturn disciplinary adjudication and order expungement of prisoner's record without inquiring whether the violation had any effect upon the outcome of the proceeding where hearing officer violated court order establishing procedural requirements for prison disciplinary proceedings); Von Kahl v. Brennan, 855 F. Supp. 1413, 1421 (M.D. Pa. 1994) (holding that, where the minimal
(continued...)

improper for this federal Court to overturn the Petitioner's disciplinary adjudication and expunge his record if he suffers no harm from the procedural error. <u>Elkin</u>, 969 F.2d at 54. Allowing a federal court to impose such sanctions would undermine the public interest in the proper enforcement of prison disciplinary rules and, therefore, is not justified. *Id*.

Here, the Petitioner fails to identify how he was prejudiced in his ability to provide a defense by the alleged failure to receive advance written notice of the charges. Thus, he has failed to show that he was denied due process.

Second, even if Plaintiff received no due process protections prior to his placement in DC custody, he can show no violation because he received regular periodic reviews by the Program Review Committee (PRC). *See* <u>Shoats v. Horn</u>, 213 F.3d 140 (3d Cir. 2000) (holding that periodic review by PRC of status of prisoner held in administrative confinement for eight years afforded all due process to which inmate was entitled).

Specifically, DC-ADM 801 concerning inmate discipline provides that Disciplinary Custody Inmates are reviewed every ninety (90) days by the PRC, every month by the Unit Management team, and every week by the Counselor. DC-ADM 801, ¶ VI.M.9. The

---

(...continued)
requirements of due process have been met, an inmate must show prejudice when a particular regulation is not complied with before a federal court will intervene); <u>Laird v. McBride</u>, 858 F. Supp. 822 (N.D. Ind. 1993).

record evidence shows that Plaintiff received his 90-day PRC reviews and even received a two-year cut off of his disciplinary time (doc. no. 129-3, pp. 36-45). Thus, he can not show his due process rights have been violated.

2. <u>Property Interest</u>

Plaintiff's final claim is that he was denied due process of law when the defendants deducted money from his inmate account without providing him notice and an opportunity to be heard as to the imposition of assessments concerning his destruction of government property.[7] This states a claim under the Fourteenth Amendment. <u>Holloway v. Lehman</u>, 671 A.2d 1179 (Pa. Cmwlth. 1996).[8] *See also* <u>Quick v. Jones</u>, 754 F.2d 1521 (9th Cir. 1984) (inmate stated claim for due process deprivation resulting from deduction of money from his prison account); <u>Gillihan v. Shillinger</u>, 872 F.2d 935 (10th Cir. 1989) (allegations of freezing of inmate's funds in his prison account sufficient to state civil rights claim for due process deprivation); <u>Artway v.

---

7. 37 Pa. Code § 93.10(a)(2)(iii) provides that the Department of Corrections may subject an inmate to sanctions including the payment of the fair market value of property lost or destroyed or for expenses incurred as a result of the misconduct.


8. <u>Holloway</u> involved a suit by disciplined inmates challenging the procedure for valuing destroyed prison property and for deducting money from their personal inmate accounts. The Court held that before an assessment of damages against an inmate could occur, the inmate must be provided an opportunity to challenge the assessment in a hearing that comports with administrative agency law.

<u>Scheidemantel</u>, 671 F.Supp. 330 (D.N.J. 1987) (holding that procedures whereby amount of restitution were determined without a hearing were constitutionally defective).

Pennsylvania law provides that the Department of Corrections may require the prisoner to pay to the department any financial loss or cost that is the result of the inmate's violation of a written rule governing inmate behavior and may deduct from an inmate's institutional account the amount of any assessment made against the inmate. 71 Pa. Stat. § 310-4. To implement this directive, DOC developed Policy 1.7.5 "Assessment of Costs Resulting From Inmate Misconduct." This policy provides for an assessment hearing where the inmate may have the opportunity to present evidence and testimony to dispute the amount of the financial lost set forth by the DOC. Notwithstanding, the Policy requires an inmate who wants a hearing to sign the notice of assessment in the space indicated requesting a hearing. Policy 1.7.5 ¶ VI.B.1.d (doc. no. 129-2, p. 2). Plaintiff admits that he refused to sign the Notice of Assessments delivered to him (doc. no. 137, pp. 5, 7). Consequently, he cannot now complain that he was denied due process.

### ORDER

**AND NOW**, this 8th day of February, 2008;

**IT IS HEREBY ORDERED** that the Defendants' Motion for Summary Judgment is **GRANTED**.

Lisa Pupo Lenihan
United States Magistrate Judge

cc:  Sean Pressley, CG-4129
     SCI-Frackville
     301 Morea Rd
     Frackville, PA 17932